The next case, number 22-1767, Jean Bazile v. Merrick B. Garland. At this time, would counsel for the petitioner introduce himself on the record to begin? Good morning. May it please the Court, for the record, my name is William Keefe, and I'm representing the petitioner, Mr. Bazile, with co-counsel from ACLU. So, yeah, good morning. The petitioner argues that the findings and conclusions of the immigration judge were not supported by the evidence presented at his individual hearing. And specifically, it is argued that the petitioner's evidence was, or the Court's finding that his evidence was speculative as to the issue of the CAT elements was erroneous. I know the Court mentioned that you're familiar with the facts. I don't want to drag on too much, but it is somewhat of a fact-based argument. My client's testimony about his concern. If you could focus on what you think was not considered, because that seems to be your argument, that certain things were not considered that could plausibly have, were done enough to support a contrary conclusion. So the petitioner's father testified. His name is Serge Bazile. He testified momentarily, maybe over the course of three, four minutes. There was an issue of an interpreter, a Haitian Creole interpreter that had not been ordered by trial counsel, but he had a working knowledge of English, and he did testify over the course of three to four minutes in English. There was a bad phone connection, so the immigration judge decided to terminate his testimony, but allowed what she describes as his affidavit, which is referenced on page 12 of my addendum, where the immigration judge references, on page 10, it's exhibit 12, tab D, his affidavit, the father's affidavit was accepted, and I think the immigration judge found her credible. But in that affidavit, the father doesn't go into too much detail, but he references the political affiliation he had when he was living in Haiti, albeit 30 years beforehand, but he referenced his brother being killed. He represented in that affidavit that his aunt was killed, and that his father was killed. And all of that information he related was due to his and the family's political affiliation with this Haitian political movement that, all the while, although 30 years ago, assisted in several coups and was associated with the previous Haitian dictator in the 1980s. And you're saying that that was not considered by the agency or the board? I think it's just kind of ignored by the court in its immigration, in the IJ decision. And granted, the plaintiff, the petitioner's testimony was largely secondhand, the sister was largely secondhand, they were both deemed to be generally credible witnesses, but I think if the immigration judge gave further deference to what is set forth in the father's affidavit, then that would have been sufficient for Mr. Bazille to have satisfied the court on the elements of the convention. The father hadn't been in Haiti in something like 35 years, right? The father left Haiti sometime in the late 80s, so yes, it was a significant period of time. And was describing what circumstances were at that time, which certainly had dire consequences for people affiliated with the Lavalis party. But why isn't it speculative to say, and therefore, 35 years later, it would be dangerous for my son to come back? And there wasn't a whole lot of country conditions, evidence presented by the trial counsel, but the immigration judge acknowledged in her decision that the nation of Haiti has devolved into a completely chaotic, dangerous, and violent place, and I think there was sufficient country conditions, evidence referenced that the political environment there is fraught with violence. And there was an article, albeit dated 2008, that discussed this political movement that the petitioner's father was a member of. The offenses or the grounds for the removal here are what again? He was convicted in the Suffolk Superior Court of a shooting. In what year? I think that was an incident that took place in 2014, convicted in maybe 2017, served maybe three to three in a day in state prison, and then after he wrapped up his sentence, he picked up a second offense in the Plymouth Superior Court, which was an assault, dangerous weapon type offense that is on direct appeal after a bench trial in front of a state court judge. Thank you. Thank you, counsel. At this time, if the attorney for the ACLU would introduce himself on the record to begin. Good morning, your honors. May it please the court. Let me start with the importance of why the court should provide guidance on the judicial venue question. That's because of 2020 EOIR policy, which is the Executive Office for Immigration Review, which is the higher agency of the BIA. The reason is that on page five of that 2020 policy, it directs IJs to comply with the circuit court ruling on the choice of law question, and we do not have that ruling at the first circuit. So we admit that Madam Garcia will help us, has already helped us, but without having guidance from this court, it is still an open question. For example, we through other organizations reach out to the acting chief of immigration judge in Virginia to find out the official policy of the choice of law after Madam Garcia. The only comment that we heard was all the IJs in Virginia are aware of Madam Garcia, period. There's no policy, there's no commitment to direct all the IJs to follow Madam Garcia. What is the source of authority for the resolution of the choice of law question? I have to admit, Chief Judge Barry, it's a difficult question because the statute regulation does not provide any legal basis for choice of law. The only source of law is the choice of law. The only source of law that I've seen, that we have seen, is the BI's own precedent. For example, page four or five of Madam Garcia provides that agency is bound to follow the law of the circuit based on where the immigration courts are located. Where they're located? Yes, Your Honor. Does it treat the question of where they're located as, is that the phrase, located? I believe so, Your Honor. And do we have anything about the agency's view of whether the word located equals where the immigration judge completes the proceeding? No, Your Honor. There's no guidance there. Is there any logical reason for those two things to be different? From our view, it should be the location of immigration court where the charging document is filed because that's what the text of it is. That was not what I asked. Is there any reason for the question of located for purpose of choice of law for the agency to be different from the question of where the immigration judge completes the proceedings within the meaning of the judicial venue statute? We believe that it should be the same and the best reading of the statute. And then the choice is, what does located mean? Administrative cold court, designated hearing court, where the person's vacationing, who's hearing the case, all those different possibilities. But those two should match in your view because it doesn't seem to make a whole lot of sense to have it proceeding under choice of law that's not going to be the law of the circuit where the case has to be petitioned to. Does that come from the... No, I don't have a question on that. I have another question. Let me just finish on this. Does the way to resolve that point have to come through a construction of the regs by the agency itself? Or is there an argument that the judicial venue statute mandates that? Or that we have some federal common lawmaking authority here? Because it does seem a little bit strange that the agency would be free to pick the choice of law like this was sort of an arbitration contract or something. They could pick any old law and we'd have to apply it. To answer your question, Chief Judge Barron, the agency as mentioned in Medgar Garcia has no rule for the interpretation of judicial venue statute. I know that. So I believe this court has a discretion to find what is the best reading of the statute based on various factors including, for example... And do you think the statute can be read to take a position on choice of law? The court can consider the choice of law approach adopted by the agency as one factor. Even if the court does not defer to the agency for the interpretation of the judicial venue statute. Because that choice of law question is important in practice. Because that means that all parties including IJs, non-citizens, Department of Homeland Security would apply the law of the circuit court where the non-citizens would ultimately litigate if they choose to do so. I'm curious, Mr. Kim. You seemed resistant in your original presentation to the concept that motions for change of venue could be made if we were to rule that, for example, the designated hearing location would determine venue and thus choice of law and location. Why wouldn't the parties be free in the normal course to move for a change of venue? And if that motion were granted, the predictable consequences would follow the granting of the motion. Just to clarify our position, let's say that the charging document says Boston.  If the non-citizen or DHS wants to transfer that admin venue to Connecticut, for example, by filing a motion to change venue. And if it's granted, then we agree. But the only concern that we raised as a hypothetical example was there could be some rare cases where charging document has discrepancy. It is being filed at a different location. And DHS does not, mistakenly, does not issue Form I-831, which is to amend. That's just because there's an administrative mess up, in other words. Yes, Your Honor. If that happens, it is unclear whether non-citizens would have that opportunity to even file the change of motion in the sending court. Because motion to change your venue cannot be filed and granted by the receiving court. No, that's understood. But in the ordinary case, it seems to me that change of venue should work the same as it does in any other type of litigation. Yes, Your Honor. File a proper motion, get a ruling. If the ruling orders change of venue, then venue is changed. If the motion isn't acted on or is denied, then it's of no effect. That's correct, Your Honor. We don't have any dispute about that. I just have one last question for you. In your brief, and I can't remember which of the ones it might have been in, I thought there was a reference to an EOIR document where the sentence in the brief says something like, it's docketed for signature by the immigration judge, the order. Yes. And the implication was that that docketing occurs at the administrative control court. And the way it's written, it sounds like it's been signed after that docketing occurs. Is that how it works? So I cannot speak on behalf of EOIR based on our reading of their policy, based on our reading of their process. It appears that in many cases, for example, either issue or a decision, that decision has to be processed, docketed by the immigration court that has the administrative control. And that's when the parties would receive the decision formally. You just skipped the key step. When is it signed? When is the order signed by the immigration judge? Is it post? The way it's written in your brief, it's post docketing because you say docketed for signature, not docketed after signed. Which is it? Based on the process that we cited, we saw it was after the docketed. I'm sorry, before the docketed. It was signed before docketed? Yes, Your Honor. Signed before docketed? Yes, Your Honor. Okay. Unless the Court has any questions, we ask the Court to adopt the amicus position about judicial venue. Thank you. Thank you, Counsel. If Counsel for the Respondent could please introduce himself on the record to begin. The benefit of going last. Counsel, could you pull your mic up? The benefit of going last. I'm going to call an audible here and start my argument by saying, the matter of Garcia is the government's position on venue. And if you choose to decide venue, whatever you do, don't follow Herrera Ocala. That is our position in this case. Venue is appropriate for Mr. Bazille in this court because the notice to appear lists the Boston Immigration Court. It was probably filed in the Boston Immigration Court, although it's hard to tell. And there was no change of venue in the meantime. So the last step for Your Honors to sort of complete the handshake between yourselves and the matter of Garcia and the Board is to recognize what the Board did and what SAR did, that things are completed, that's judicial venue, where they commence, that's regulatory venue, unless somebody moves them in the meantime, that's your change of venue. And the key to accepting that handshake, as it were, is to recognize that there's ambiguity in the statute. There's also ambiguity in the regs, but it doesn't matter as much here. The statute, the best evidence of ambiguity is that you've said so before in Giuselli, as you pointed out. You said, so far from conclusive that you would need policy or history arguments in order to make full sense of it. But just, I think it's clear that the phrase, in which the IJ completed the proceedings, is ambiguous, and this is what Herrera Ocala gets wrong, because it's really only interpreting the phrase, in which. But 1252B is asking us the question, where is a thing completed? And in order to answer that question, you have to know what the thing is and how do you complete it. So we need to interpret the phrase, completed, as your questions to Miki, I think. Can I just ask you, just textually, just so we make sure we put a button on this. You just changed the text when you described it. Did I? Yeah. Because you said it's asking where the thing is completed. Yes. But that's not what the text says. The text says where the judge completes it. Sure. So what is the ambiguity in that? I take that's the Herrera. If there's an argument on the Herrera point, it's that. It doesn't say where the thing is completed. It doesn't say where the proceedings are completed. It says where the judge completes them. So what's ambiguous about then asking where is the judge when he completes them? That's a serious question. What is the answer? I understand. And that's not the question that's asked. Because it's not saying where is the judge when he completes it. It says when the IJ completes proceedings, that's where venue is. So we don't know where, as you pointed out. You just changed it again. You just said when he completes them. Right. Where? It says in which. Yeah. So that's a where. So where is the judge when he completes them? That's what the Herrera asks as the question. You're saying it's ambiguous whether that's asking is the judge where the judge is or is the judge somewhere else? And you might say it's not obvious that's ambiguous. So why is it? It's not obvious because we don't know what complete means. We don't know what the exact proceedings are. As you pointed out, we don't know how an IJ completes something because that's not something that's been litigated. And it's not something the agency can help you with because, as it points out, it can't interpret the statute for you. If you look at the record in this case, I believe it's on page 56, we have the transcript of the oral decision that the IJ gave. It's a signature page. It's captioned Fort Worth because that's where the IJ was. We know that from the transcript. It's not signed. What's ambiguous isn't what's ambiguous about the statute. The statute says in which the IJ completes the proceedings. The Fourth Circuit says that means that what you've got to answer is where the IJ is. But what matter of Garcia says is what matters is where the proceedings are. Where the proceedings are completed, that's what you've got to determine. Focus on the proceedings, not focus on the IJ. Two different ways of looking at the same language. Well, I think that's a good point, and it's good evidence that it's ambiguous. How does a person complete a proceeding? And I know I've changed the language, but I'm doing it for illustrative purposes because we're trying to answer this question. In order to answer a basic question like that, you have to know what the person is doing and what it is they're doing it to. So we don't know where the IJ was, and that's nitpicky here because the IJ signed the summary order on page 62. That's captioned Boston. When did he do that? I don't know. If we follow Herrera-Alcala's... One other question. Do you know what led to the change in the venue statute? So the earlier version of the venue statute honestly seems a little strange to me because it seemed to say that wherever it was completed in whole or in part, which suggested it could have been completed in many... Wherever it took place in whole or in part, is that how it said? Where it was conducted, I think. Yeah, conducted in whole or in part, which suggested there could be multiple venues. But do you know what led to this change? I mean, what were they trying to solve? Is there any indication in the legislative history or the hearings that they were... Why they wanted to change it from X to this? Given the posture of this case, to answer a question like that, I probably want to do another supplemental brief since this came up. I'm going to call the question before Garcia came out. But regardless, Congress hasn't done you any favors by drafting it the way it did. And the board can't help you by interpreting the statute directly, but what it has done here, it has offered guidance. Because the matter of Garcia, which is a great case, is a choice of law case come venue. So the board is recognizing that the courts of appeal, particularly Herrera, Alcala, Fourth Circuit, are struggling to understand where an IJ completes proceedings in modern days where the parties are scattered to the winds. It recognizes a very basic premise, like I mentioned earlier. Things are completed where they are commenced unless they move in the meantime. So it is offering a very clear vision to the courts of appeal of saying, here's where it started, here's your venue, it never moved. If you want to know where it's completed, it's probably where it is right now. Does the government have a view as to what the source of legal authority for choice of law is? Is it up to the agency to select what will determine choice of law? Is it coming from the judicial venue statute? Is it a federal common law question for courts to resolve? Do you have a view on that? There is a case cited in matter of Garcia, and its name is escaping me, but the board has precedent on where courts of appeal are located vis-a-vis what law they follow. There may be a discussion of that in there. That's not something that I got to as part of this because I don't actually need as a resolution of venue to get to the resolution of my case. I would direct you to that case for answers, I hope, because that's probably the most recent and most authoritative statement the board has. But the reason I'm talking about ambiguity is, as we said, I'm not asking for deference. The board didn't ask for deference. It's just that's how Herrera-Alcala framed it, so that's what we're attacking. But again, the board is due some kind of deference here, whether it's Skidmore deference, as my colleague mentioned earlier. It is also interpreting its own regulations, which could bring in our deference. It's kind of a layer cake decision. As I said, I described it as an invitation to a handshake before. I think that's why it's a good case. Another reason why I think it's good, because there is just a bit of daylight, I think, between the board's position and Amiki's position here, is because there is some ambiguity in the regs, too. The venue, the jurisdiction statute says, jurisdiction vests and proceedings commence when a charging document is filed at an immigration court, not where. It says when. And then venue lies where proceedings commence. Where does that happen? We don't know. The board, since this is a choice of law case that rests on venue, gives the parties the opportunity to work that out up front, so that there is a clear statement of venue on the bet that the courts of appeal will interpret 1252B2 the way that they predict. So there is the guidance for you. So if you wanted to decide it, that's the way you should go, not Herrera-Alcala. On the merits of the petitioner's claim. Go ahead. Just a couple of practical questions. Do you know whether the venue issue that we're dealing with is on appeal in other circuits currently? That's one. And two, are we setting up some sort of administrative issue of comity with the Fourth Circuit or other circuits that the government has any worry about at this point? Herrera-Alcala is a problem. The agency is going to have to do something about it, but it is still predicting that most of the courts of appeal, if not follow its interpretation or its prediction exactly, will tie judicial and administrative venue together. And most courts of appeal have either done that explicitly or implicitly to the extent they've addressed it. There's no official rule of comity or discussions that I'm aware of. And no other cases on appeal that I'm aware of, although I could be wrong about that. On the merits of petitioner cases, what is the status of removals to Haiti at present? We were discussing whether there was temporary protected status for some Haitians, but I believe because the petitioner is only eligible for deferral, that he's not eligible for any sort of relief from removal. I don't know whether flights are going to Haiti at the moment. That's what I'm asking. DHS hasn't weighed in. I did ask, but I don't know whether or not those flights are going on. I would guess it's some sort of reduced schedule, but I don't want to speak definitively on it. Any further questions? Thank you.